O’Nealu, J.
I agree with the Chancellor, that the negro woman Fan has been properly sold, and that her proceeds are divisible between the testator’s sons, Matthew, James and Robert, and his daughters Margaret and Agnes ; and that the child bom before the testator’s death is a part of his residuary estate, and is divisible under the residuary clause of his will.
I also agree with him that the increase of Fan, born after the testator’s death, but before the death of the tenant for life, constitutes another part of the residuary estate, and must be divided between the residuary legatees.
It is not, as I understand, pretended that William Bryson ever did *96 elect to take Fan at the price or sum limited by the will; but if he had done so, he could not have acquired any right to the increase ; for, at a certain time (the death of the widow) he is allowed to buy Fan, if he chooses, for a given sum. Until he made the purchase by taking the slave and agreeing to pay the price, he could have no vested right in her which would entitle him to the increase.
*1181 *The five elder children, it seems to me, have proceeded under a J mistaken notion that Fan was bequeathed to them at the death of the testator, and the possession postponed until the death of the widow. If this had been so, then their construction of the will would have been right; but she never was bequeathed to them at all; her proceeds, when ■sold, were directed to be paid to them. But, if the bequest of the proceeds of the sale of the slave was equivalent to a bequest of the slave herself, still I think the plaintiffs would not be entitled to more than the specific slave.
■' The words of the clause, under which the five elder children claim, are : “ It is further my will that after the decease of my wife, that my negro girl Fan, if my son William thinks proper, is to be sold, and the proceeds of her to be equally divided among my sons Matthew and ■ James and Robert, and my daughters, Margaret and Agnes, but if William choose to keep the girl Fan, and not sell her, it is iny will that he may, by paying to each of the above-named children, one hundred ■dollars. ”
The first rule in the construction of a will is, that the intention is to have effect, if it can be clearly ascertained from the will and be not contrary to some known rule of law. Here the intention is perfectly clear, that the testator only intended that the specific slave should be sold, and the proceeds divided. This is manifest by his designating her as the negro girl Fan, and by the price which he fixed on her alone.
But, to entitle the elder children to the increase of Fan, the legacy in their favor ought to have given them a vested right in her from the death of the testator, to be enjoyed at the death of the tenant for life. The legacy is, however, purely future and contingent; it is a mere direction by the will that she should, after the death of the testator’s widow, be sold; but this was not even positive and peremptory — it was tp be so “ if my son William think proper if he thought proper he might take her himself, by paying to the elder children one hundred dollars each. These . provisions made the legacy of Fan (if it can be so considered) purely contingent: no one under the will had a fixed right as a legatee to her. She might be sold by William, or he might keep her ; and until the death of the widow, and he had decided which course he would pursue, the will was wholly provisional. “The distinction between vested and contingent legacies is, that a vested legacy, immediately on *1191 death of the testator1, attaches as a debt upon *his real or •J personal estate; whereas a contingent legacy does not attach upon either, until the contingency happens. In the first case, the legacy is debitum in prcesenti, solvendum in futuro ; but where the legacy is merely contingent, not constat, whether under the will the fund will' ever be charged with it.” 2 Bridg. Dig. Tit. Leg. sec. ix. par. 820. This rule applies more particularly to pecuniary legacies, but still its analogy will reach to specific legacies. For the question in both is, whether a *97 present interest passes; if it does not, the legatee cannot have any right until the contingency happens. In this case, so far as the older children are concerned, the legacy before us is pecuniary and contingent: it is pecuniary, because it entitles each one to a share of the proceeds of the slave, in money; it is contingent, because its eventual payment depended upon the life of a slave, as the thing, whereby the fund was to be created. As was said by that eminent lawyer and good citizen, Mr. G-rimke, (whose early death South Carolina will long deplore,) in his argument of Taveau v. Ball, 1 M’C. Ch. Rep. 13 : “If the time of division be not the substance of the gift, it is only matter of regulation.” That applies to cases where there has been a gift to several, and a future time appointed for division — then, if the time of divison be not the substance of the gift, it only operates to regulate the division to be made. But in this case, the rights of the elder children are not to the thing itself, but that the proceeds of the slave, when sold, should be divided among them. The division is, hence, of the substance of the gift; and they can take no interest, until by law, or rather by the will, that division is to be made. The rule, as to the vesting of legacies, is very well stated in Bac. Ab. tit. Leg. E. 2: “ If a legacy be devised to one to be paid or payable at twenty-one, or any other age,” it is vested — the time being annexed to the payment, and not to the legacy itself; “ but if a legacy be devised to one at twenty-one, or when he shall attain the age of twenty-one,” the legacy would not vest until the legatee was of the' age prescribed. The application of this rule to the case before us, shows that the legatees now claiming had no vested right until the death of the widow. Eor it is a bequest to them, “after the decease of my wife.” This is a distinct clause from' that in which he had given her a life estate ; and her death is fixed upon as the commencement -of their interest: and the clauses do not authorize the construction that the estate for life and the remainder constitute together one gift; each is separate and ^distinct, and the testator, after his widow’s death, is to be regarded as then <- making a disposition of the slave.
The case of Swinton v. Legare, 2 M C. C. Rep. 440, is a very clear authority in favor of the view that the elder children did not take a present interest. There the testator devised and bequeathed to his daughter Susannah Swinton, “during life, and after her death to be equally divided among the survivors of her children, to each of them share and, share alike, as they shall attain the age of twenty-one or marriage.” The question was whether all of her children living at the testator’s death, or only those who were alive at her death, would be entitled to take. It was held, that the legacy in remainder did not vest at the testator’s death in all Susannah Swinton’s children; but, at her death, it vested in those then alive. That case turned, it is true, upon the construction of the word “survivors,” but still the case is an authority for my purposes here. For, as Judge Nott in the conclusion of the case said, “being given to her during life, and after her death to be divided among her surviving children, it must necessarily relate only to those who were living at the time of her death.” So here, the bequest being after the death of the testator’s widow, that the slave Fan should be sold, and her proceeds be divided among certain persons, it follows that their rights arise at the death of the testator’s widow, and not before.
*98 The case of Taveau v. Ball, 1 M’C. C. Rep. Í, if it has any application to the case, militates against the purposes for which it was cited. In it the Chancellor says, “the time of the division is not at all connected with the gift. The preceding clause had given these estates, absolutely to the sons, and gave a plain vested interest.” In the case before us, the clause of the will does not give Fan to the elder children absolutely, nor does it give them any plain and vested interest in her. The time of division here is directly connected with the gift; indeed, it depends upon the sale for division. If it had been impossible to make a sale, by the death or worthlessness of the slave, the gift to the elder children would have failed.
The case of Brailsford and wife v. Heyward, 2 Eq. Rep. 18, turned altogether upon the jntention of the testator, and has not the slightest analogy to the case before us.
So far, therefore, I am perfectly satisfied with the Chancellor’s decree; *•, and I have added these remarks, to those contained in his *decree, -* more to satisfy the parties than from any actual necessity requiring it to be done, in order to a correct understanding or decision of the cause.
But I think the Chancellor ought to have directed the counsel fee paid by the plaintiff to be refunded to him, in the same manner in which he directed the costs to be paid. There seems to have been a necessity for the plaintiff to come into the Court of Equity, to obtain its judgment, as to the construction of the testator’s will. The case of Warden v. Burts, 2 M’C. Ch. Rep. Í6, allows the counsel fee as well as the costs, where they have not been the result of the executor’s or administrator’s misconduct.
The Chancellor’s decree is in this respect modified, and in all others affirmed.
Johnson, J., and Harper, J., concurred.